## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **GABRIEL GALERA, and all others**, | § | |
| **similarly situated under 29 U.S.C. § 216(b),** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-4723-L** |
| | § | |
| **RELIEF NET ROAD SERVICES, INC.,** | § | |
| **and SHADI SALHI,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendants Relief Net Road Services, Inc. and Shadi Salhi's Motion for

Summary Judgment, filed December 15, 2014 (Doc. 26), and Plaintiff's Motion for Summary

Judgment, filed December 15, 2014 (Doc. 22).  Having considered the motions, responses, replies,

record, and applicable law, the court **grants** Defendants Relief Net Road Services, Inc. and Shadi

Salhi's Motion for Summary Judgment and **denies** Plaintiff's Motion for Summary Judgment.

## I.    Factual Background and Procedural History

This is an action brought by Plaintiff Gabriel Galera ("Galera" or "Plaintiff") against his

former employer, Defendants Relief Net Road Services, Inc. ("Relief Net") and Shadi Salhi

("Salhi") (collectively "Defendants"), for violations of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 et seq.[1]  Plaintiff alleges that Defendants failed to compensate him at one and one-half

times his regular pay rate for all hours worked in excess of forty hours per week as required by the

FLSA.  Defendants have filed a motion for summary judgment on their affirmative defense that

---

[1] Although Plaintiff initiated this FLSA lawsuit as a collective action (*see* 29 U.S.C. § 216(b)), he is the sole plaintiff.

**Memorandum Opinion and Order - Page 1**

Plaintiff is exempt from the FLSA's overtime provisions pursuant to 29 U.S.C. § 213(b)(1), known as the Motor Carrier Act ("MCA") exemption.  Plaintiff has filed a cross-motion for summary judgment arguing that he is not an exempt employee under the MCA exemption. The court now sets forth the summary judgment evidence, viewed in the light most favorable to the nonmoving party. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The evidence is undisputed unless otherwise noted.

Relief Net is a Dallas-based tow truck company providing towing services to its various clients, including motor clubs and associations.  Defs.' Summ J. App. 1-2 (Doc. 28) (hereinafter, "Defs.' App.").  Salhi is the President and majority owner of Relief Net.  *Id.* at 1, 38.  Relief Net tows vehicles not only within the State of Texas but also across state lines into other states, including Oklahoma, and from other states into Texas.  *Id.* at 1-3, 4-7.  In 2011, Relief Net (through its predecessor company) towed seventeen cars across state lines.  *Id.* at 2.[2]  In 2012, Relief Net towed twenty-eight cars across state lines.  *Id.*  In 2013, Relief Net towed thirty-four cars across state lines.  *Id.*  Relief Net solicits and receives interstate transports from its customers, and advertises on its website that it does interstate towing.  *Id.* at 2, 6-7.

---

[2] Invoking the "sham affidavit" doctrine, Plaintiff objects to Salhi's affidavit testimony regarding the number of times that drivers towed vehicles across state lines between 2011 and 2013, arguing that this affidavit testimony "directly contradicts the testimony given by Defendant Salhi during his depositions."  Pl.'s Resp. to Defs.' Mot. for Summ. J. 6, 11 (Doc. 30).  The court **overrules** this objection.  The court has scrutinized Salhi's statements in his affidavit and his prior sworn deposition testimony, and finds no conflict.  *See generally S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495-96 (5th Cir. 1996); *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 247 (N.D. Tex. 2011) (Under the "sham affidavit" doctrine, a "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit [that] contradicts, without explanation, his previous testimony.") (citations omitted).  Salhi's affidavit provides the approximate number of interstate trips per year from 2011 to 2013, totaling seventy-nine. Defs.' App. 2.  Salhi testified at his deposition that he could not recall the exact number of interstate trips, but that the number "varies" depending on what "the customer wants," that interstate towing services are offered, and that any driver is eligible to go across state lines to deliver a vehicle.  *Id.* at 44-45.  The court concludes that Salhi's affidavit supplements and clarifies, rather than contradicts, his prior sworn deposition testimony, and the court will accordingly consider Salhi's affidavit testimony.  *See S.W.S. Erectors*, 72 F.3d at 496 ("When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment.").

**Memorandum Opinion and Order - Page 2**

Relief Net hired Plaintiff on June 20, 2011, as a tow truck driver. *Id.* at 2. Plaintiff worked for Relief Net from June 20, 2011, to July 4, 2012; from November 6, 2012, to August 3, 2013; and from October 29, 2013, to November 15, 2013. *Id.* at 2, 17-18. During his employment, Plaintiff drove trucks weighing over 10,001 pounds (including the truck and the towed vehicle). *Id.* at 2. When Plaintiff was hired by Defendants he was told that Defendants towed vehicles in the Dallas-Fort Worth metroplex and that his job duties would only require towing vehicles in the Dallas-Fort Worth metroplex. Pl.'s App. in Resp. to Defs.' Mot. for Summ. J. 39-40 (Doc. 31) (hereinafter, "Pl.'s App.").

Relief Net provided Plaintiff with the majority of his assigned tows through dispatch. Defs.' App. 2. The dispatch assigned tows based on many factors, including driver availability and location. *Id.* Tow truck drivers were provided the origination and destination locations for each tow by either a text message or an e-mail, which at times could be followed by a telephone call from the dispatcher if the driver did not respond to the text message or e-mail. Pl.'s App. 39. All tow truck drivers were eligible to receive interstate tow calls during their shift. Defs.' App. 3, 45. Plaintiff could have been called upon to make an interstate tow during his employment. *Id.* Plaintiff does not recall ever receiving an interstate towing assignment from Defendants and has no e-mails showing that he received such an assignment. Pl.'s App. 39-40. Salhi has no knowledge of Plaintiff ever going out of state as part of his job duties while employed by Defendants. Defs.' App. 43.[3]

---

[3] The parties dispute whether Plaintiff was, in fact, called upon to travel interstate during his employment with Defendants. Defendants have submitted evidence that Plaintiff was called upon to make two interstate tows to Oklahoma that he refused. *See* Defs.' App. 3, 4-5, 12-13, 43-44. Plaintiff has submitted an affidavit contesting this evidence (Pl.'s App. 39-40), and also filed objections to the evidence. Pl.'s Resp. Br. 6-7. The court need not resolve this evidentiary dispute, as case law makes clear that whether a particular employee actually travels across state lines is not the relevant inquiry in determining whether the MCA exemption applies. *See infra* Section III.C.2.b. In any event, for purposes of summary judgment, the court must accept as true Plaintiff's affidavit testimony that he was never called upon to travel

At the time Plaintiff left Defendants' employ on November 15, 2013, there were approximately fifteen to twenty drivers employed by Defendants.  Pl.'s App. 40.  Plaintiff is aware of only two drivers who performed interstate towing services during times when he was employed. *Id.*  Salhi recalls the names of three drivers who delivered vehicles across state lines during the relevant time period — Tony, Rodolfo, and Brandon — but testified that "any driver in the company should have or could have delivered out of state."  Defs.' App. 45.

Plaintiff filed this lawsuit on November 27, 2013, alleging violations of the FLSA's overtime provisions, and seeking overtime compensation, liquidated damages, and attorney's fees and costs.  On December 15, 2014, following a period of discovery, Defendants filed a motion for summary judgment, arguing that they are exempt from the FLSA's overtime provisions pursuant to the MCA exemption, 29 U.S.C. § 213(b)(1).  (Doc. 26).  That same day, Plaintiff filed a cross-motion for summary judgment, arguing that the MCA exemption does not apply to him and he is, therefore, entitled to coverage for overtime wages under the FLSA.  (Doc. 22).  Having been fully briefed, both motions are ripe for decision.[4]

## II.     Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 323; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a

interstate.  *See Celotex*, 477 U.S. at 323.

[4] On January 5, 2015, Plaintiff filed a response to Defendants' summary judgment motion as well as objections to certain evidence (Doc. 29), and Defendants filed a response to Plaintiff's summary judgment motion.  (Doc. 32).  On January 20, 2015, the parties filed their respective replies.  (Docs. 39 and 40).

**Memorandum Opinion and Order - Page 4**

reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record

and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Defendants' Motion for Summary Judgment

Defendants move for summary judgment arguing that Plaintiff's FLSA claims are barred by the MCA exemption. In response, Plaintiffs argue that summary judgment should be denied because: (1) Defendants waived the defense of the MCA exemption by failing to plead it as an affirmative defense and by conceding during discovery that Plaintiff is covered by the FLSA; (2) Defendants filed their summary judgment brief after the court's 5:00 p.m. deadline and it should therefore be struck; and (3) Defendants have failed to carry their burden to prove that the MCA exemption applies to Plaintiff. Plaintiff has also objected to certain evidence submitted by Defendants in support of their summary judgment motion. Prior to considering the applicability of the MCA exemption, the court first addresses Plaintiff's procedural arguments of waiver and late filing.

A.      **Affirmative Defense Sufficiently Pleaded**

In opposition to Defendants' motion, Plaintiff argus that Defendants waived the affirmative defense of the MCA exemption by failing to plead it in their Answer or identify it in response to interrogatories. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. 5-6 (Doc. 30) ("Pl.'s Resp."). "[A] party must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c). "A defendant must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (citation and internal quotation marks omitted). Failure to abide by Rule 8(c) may lead to waiver. *Id.* In their Answer, Defendants specifically pled exemptions pursuant to Sections 7 and 13 of the FLSA. *See* Defs.' Orig. Ans. ¶ 2 (Doc. 8). "Section 13" refers to exemptions under the FLSA, and several courts refer to "Section 13" when discussing the MCA exemption. *See, e.g., Morris v. McComb*, 332 U.S. 422, 437 (1947); *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 38 (5th Cir.1962); *Barefoot v. Mid-America Dairymen*, 826 F. Supp. 1046, 1050 (N.D. Tex. 1993) (Kendall, J.). For these reasons, the court concludes that Defendants' Answer was sufficient to give Plaintiff fair notice of the affirmative defense on which Defendants' Motion for Summary Judgment is based. Further, even a technical failure to comply precisely with Rule 8(c) may be excused as long as "the affirmative defense is raised in the trial court in a manner that does not result in unfair surprise." *Rogers*, 521 F.3d at 385 (citation and internal punctuation omitted). Behind Rule 8(c) is the concern that a "defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Id.* (citation omitted). In light of Defendants' assertion of Section 13 in their answer, Plaintiff cannot contend that he was ambushed by the motion for summary judgment. Lack of unfair surprise is further evidenced by Plaintiff's

cross-motion for summary judgment asserting that the MCA exemption does not apply to him. *See* Doc. 22.

The court also rejects Plaintiff's argument that because Defendants admitted in discovery that Plaintiff was covered by the FLSA, Defendants thereby conceded that Plaintiff was not exempt from the FLSA's overtime provisions. *See* Pl.'s Resp. 6. As Defendants correctly state, "there is a substantive difference between coverage, which simply means that the statute as a whole applies to an employee or group of employees, and whether or not an employee is exempt from one of more provisions of the [FLSA]." Defs.' Reply 2. (Doc. 39). Having reviewed Defendants' respective responses to Plaintiffs' First Requests for Admissions (*see* Pl.'s App. 9-16), the court concludes that there is no admission of liability under the FLSA or waiver of the MCA exemption.

**B.    Late Filing**

Plaintiff requests that the court strike Defendants' summary judgment motion as it was filed after the court's 5:00 p.m. deadline. *See* Pl.'s Resp. 6. The docket sheet reflects that Defendants' motion was filed at 5:17 p.m. (CST) on December 15, 2014. *See* Doc. 26. While Plaintiff is correct that the Scheduling Order imposes a 5:00 p.m. deadline, the court is quite certain that the seventeen-minute differential did not prejudice Plaintiff. Moreover, striking Defendants' motion on this technical ground results in exalting form over substance. Accordingly, the court declines to strike Defendants' motion on this superficial ground.

**C.    The FLSA and the Motor Carrier Act Exemption**

The FLSA requires employers to compensate employees engaged in commerce for all hours worked over forty each week at the rate of one and one-half times their regular rate. 29 U.S.C. § 207(a)(1). The FLSA exempts from this requirement "any employee with respect to whom the

Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [of the MCA.]" 29 U.S.C. § 213(b)(1).  "The exemption eliminates potential conflicts between the Department of Labor's jurisdiction over the FLSA and the Department of Transportation's jurisdiction over the Motor Carrier Act."  *Vallejo v. Garda CL Southwest, Inc.*, __ F. Supp. 3d __, 2014 WL 4851906, *4 (S.D. Tex. Sept. 29, 2014) (Rosenthal, J.).  "Section 13501 of the MCA gives the Secretary of Transportation jurisdiction over motor carriers and section 31502 authorizes the Department of Transportation to set qualifications and hours for employees."  *Id.* (citing 49 U.S.C. §§ 13501, 31502).  Section 31502 provides that the Department of Transportation ("DOT") may prescribe requirements for qualifications and maximum hours of service for employees, and standards of equipment of, both "motor carriers" and "motor private carriers."  49 U.S.C. § 31502(b)(1), (2).  It is not necessary that the Secretary of Transportation actually exercise power; rather, the Secretary only needs to possess the power to regulate the employees at issue.  *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 678 (1947).  The DOT may establish these requirements for employees who:

> (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary's] jurisdiction under section 204 of the [MCA] . . . and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA].

29 C.F.R. § 782.2(a).  "For the motor carrier exemption to apply . . . [the employees] must meet both of these requirements."  *Allen v. Coil Tubing Servs., LLC*, 755 F.3d 279, 283 (5th Cir. 2014) (citation omitted).  The application of the MCA exemption to an employee "depends both on the class to which his employer belongs and on the class of work involved in the employee's job."  29 C.F.R. § 782.2(a).  "Exemptions under the FLSA are construed narrowly against the employer, and the

employer bears the burden to establish a claimed exemption." *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2010) (citations omitted); *see also Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) ("We have held that [FLSA exemptions] are to be narrowly construed against the employer seeking to assert them.").

> 1.    *Whether Relief Net is a "Motor Carrier" or "Motor Private Carrier" Subject to the Secretary of Transportation's Jurisdiction*

The first question is whether the employee "[is] employed by carriers whose transportation of property by motor vehicle is subject to" the Secretary of Transportation's jurisdiction. 29 C.F.R. § 782.2(a); *Songer*, 618 F.3d at 472. Defendants contend they have satisfied this element with undisputed evidence that Relief Net "is a motor carrier or motor private carrier [engaged in interstate commerce] for purposes of the exemption to the MCA." Defs.' Mem. in Supp. of Mot. for Summ. J. 13 (Doc. 27) ("Def.'s Br."). While Plaintiff does not concede that Relief Net has established this first element of the MCA exemption, Plaintiff provides no argument or evidence in opposition.

A "motor carrier" is defined as a person "providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A "motor private carrier" includes a person "transporting property by motor vehicle when . . . the person is the owner, lessee, or bailee of the property being transported [and] the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." *Id.* § 13102(15)(B)(C). The MCA defines interstate commerce as commerce "between a place in . . . a State and a place in another State." *Id.* § 13501(1)(A). This definition, however, has "not been applied literally by the court. In fact, we have defined it as the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce." *Songer*, 618 F.3d at 472 (internal quotation marks omitted).

It is undisputed that during all relevant times Relief Net towed disabled vehicles for compensation not only within the State of Texas but also across state lines into other states, including Oklahoma, and from other states into Texas. *See* Defs.' App. 1-3, 4-7, 43-46. It is also undisputed that Defendants solicited and received interstate work from their client companies, which included motor clubs and associations, and solicited interstate transports on Relief Net's internet website. *Id.* On these undisputed facts, the court concludes that Relief Net is a "motor carrier" engaged in "interstate commerce." *See, e.g., D'Arpa v. Runway Towing Corp.*, 2013 WL 3010810, at *8 (E.D.N.Y. June 18, 2013) (finding a tow truck company was a "motor carrier" under the MCA where it provided transportation services for compensation by towing disabled vehicles). The court further concludes that Relief Net also qualifies as a "motor private carrier," as it is the bailee of the towed vehicle (the bailment), which is being transported in interstate commerce for the benefit of the commercial enterprise conducted by Defendants as a tow truck company. *See* 49 U.S.C. § 13102(15).[5]

Accordingly, the court holds that Defendants have established the first element of their affirmative defense under the MCE exemption, namely, that Plaintiff "[is] employed by carriers whose transportation of property by motor vehicle is subject to" the Secretary of Transportation's jurisdiction. 29 C.F.R. § 782.2(a); *Songer*, 618 F.3d at 472.

---

[5] Further, to the extent the SAFETEA-LU Technical Corrections Act of 2008, P.L. No. 110–244 § 306, 122 Stat. 1572, 1620-21 (2008), extended the FLSA's overtime provisions to employees of a motor carrier or private motor carrier working with vehicles weighing 10,000 pounds or less, it is undisputed that Plaintiff operated vehicles with a gross weight rating of 10,001 pounds or more. *See* Defs.' App. 2. *See generally Allen*, 846 F. Supp. 2d at 692-93 (discussing effect of SAFETEA-LU Technical Corrections Act of 2008 on scope of MCA exemption).

      2.     *Whether Plaintiff Engaged in Activities Directly Affecting the Safety of Operation of Motor Vehicles in Transporting Property in Interstate Commerce*

Having concluded that Relief Net is a "motor carrier" or "motor private carrier" subject to the Secretary of Transportation's jurisdiction, the court must determine whether Plaintiff was employed in a position that directly affected the safety of operation of motor vehicles in interstate commerce. *See* 29 C.F.R. § 782.2(a); *Songer*, 618 F.3d at 472. "[I]t is 'the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment.'" *Morris*, 332 U.S. at 431-32 (quoting *Levinson*, 330 U.S. at 674-75).

      a.     *Whether Plaintiffs Engaged in Activities Affecting the Safety of Motor Vehicles*

Defendants argue that Plaintiff's duties as a driver affected highway safety as a matter of law. Plaintiff does not concede this point but provides no argument or evidence in opposition. It is undisputed that Plaintiff was a tow truck driver, and his job duties included driving a tow truck to pick up and deliver other vehicles to the location designated by Defendants' customers. Defs.' App. 26, 29, 42. As a truck driver with these duties, the court concludes that Plaintiff was employed in a position that affected the operational safety of motor vehicles. *See* 29 C.F.R. § 782.2(b)(1) (citing cases); *Levinson*, 330 U.S. at 666-68; *Songer*, 618 F.3d at 472. *Barefoot*, 826 F. Supp. at 1050.

      b.     *Whether Plaintiff's Activities Involved Interstate Commerce*

Because Plaintiff was employed in a position that affected the operational safety of motor vehicles, the court must now address the question of whether Plaintiff's activities directly affected

motor vehicle safety "in the transportation on the public highways of persons or property in interstate . . . commerce[.]" 29 C.F.R. § 782.2(a).  The parties dispute this factor.

Defendants argue that "Plaintiff belonged to the class of tow truck drivers over whom the Secretary of Transportation may exercise jurisdiction because he could have been called upon to engage in interstate transportation and, indeed, actually was called upon to engage in interstate transportation."  Defs.' Br. 18.   In response, Plaintiff argues that Defendants' motion should be denied because "[i]t is undisputed that Plaintiff never actually performed any tows requiring interstate travel for Defendants."  Pl.'s Resp. Br. 11.  Alternatively, Plaintiff argues that, even under the "class" or "company-wide analysis" urged by Defendants, at the very least, "a genuine issue of fact exists concerning whether or not the Plaintiff had a reasonable expectation to perform tows that would engage him in interstate commerce."  *Id.* at 13.

To determine whether an employee engaged in safety-affecting duties that are interstate in nature, the pertinent inquiry is whether the employee "could reasonably have been expected to [engage] in interstate commerce consistent with [his] job duties."  *Allen*, 755 F.3d at 284 (citing *Songer*, 618 F.3d at 476).  As Defendants correctly state, the "inquiry is not whether the Plaintiff actually engaged in interstate commerce as stated by Plaintiff in his briefing."  Def.'s Br. 11.  If the employer can make this showing, the employee comes within the MCA exemption "in all workweeks when he is employed at such job."  29 C.F.R. § 782.2(b)(3).

Drivers may be subject to the MCA exemption even if they did not personally participate in interstate commerce.  *See Morris*, 332 U.S. at 431-33.  In *Morris*, the Supreme Court determined that a group of drivers who collectively spent four percent of their time engaging in interstate commerce, and the remainder in intrastate commerce, were subject to the MCA exemption, even

though some of the drivers had never traveled interstate. *Id.* at 433. The Supreme Court explained that the interstate commerce trips were "distributed generally throughout the year and their performance was shared indiscriminately by the drivers and was mingled with the performance of other driving services rendered by them other than in interstate commerce." *Id.* On this evidence, the Supreme Court held that "[t]hese trips were thus a natural, integral and apparently inseparable part of the common carrier service of the petitioner and his drivers," and the Interstate Commerce Commission (now DOT) had jurisdiction to regulate all of the defendant's drivers even though two drivers had never driven interstate. *Id.*

In *Songer*, the Fifth Circuit relied on *Morris* and rejected an argument by truck drivers, suing for overtime under the FLSA, that a driver must be personally engaged in interstate transportation to be exempt. *Songer*, 618 F.3d at 468. A unanimous panel held that rather than an employee-by-employee analysis, "application of the MCA exemption to an employee 'depends . . . on the class of work involved in the employee's job.'" *Id.* at 472 (quoting 29 C.F.R. § 782.2(a)). As summarized by the Fifth Circuit in its recent decision applying the MCA exemption in *Allen*, in evaluating the truck drivers as a class, the unanimous panel in *Songer* found "that about 2.75 percent of the drivers' trips were interstate; that the drivers' employer indiscriminately assigned such trips; and that, therefore, the drivers 'could reasonably have been expected to drive in interstate commerce consistent with their job duties.'" *Allen*, 755 F.2d at 285 (quoting *Songer*, 618 F.3d at 475-76). Relying on *Morris*, the Fifth Circuit held that the MCA exemption applied to *all* the truck drivers as a class, even the four drivers that never actually traveled across state lines. *Songer*, 618 F.3d at 475.

**Memorandum Opinion and Order - Page 14**

The undisputed evidence, discussed above, shows that Defendants engaged in interstate commerce, and that interstate travel, whenever it was required, was indiscriminately assigned to any tow truck driver.  *See* Defs.' App. 2-3, 45.  Plaintiff, as one of approximately fifteen truck drivers employed by Relief Net during the relevant times, could reasonably have been expected to engage in interstate commerce consistent with his towing duties.  *See id.*  Whether Plaintiff actually was called upon to transport cars over state lines is in dispute. *See supra* note 3.  Case law makes abundantly clear, however, that whether a particular employee actually engaged in interstate commerce is not the relevant inquiry. *See Morris*, 332 U.S. at 431-33; *Allen*, 755 F.2d at 285; *Songer*, 618 F.3d at 475-76; *Lucas*, 2012 WL 4754729 at *8.  Further, while Plaintiff argues that he held the subjective expectation that he would not be called upon to tow cars across state lines because he was told upon hire that he would only drive in Texas (*see* Pl.'s Resp. Br. 12-13), he offers no authority to support his contention that whether an employee actually thought he would be assigned a job involving interstate transport is controlling.  *See Songer v. Dillon Res., Inc.*, 636 F. Supp. 2d 516, 524 (N.D. Tex. 2009) (McBryde, J.), *aff'd*, 618 F.3d 467 (5th Cir. 2010) (rejecting employee's argument, absent more, that employee's expectation of interstate commerce was controlling); *see also  Lucas v. NOYPI, Inc.*, 2012 WL 4754729, *8 (S.D. Tex. Oct. 3, 2012) ("The issue, therefore, is whether objectively there can be said to be a 'reasonable expectation' that an interstate trip could be assigned to members of a group, not whether a particular employee subjectively thought he was likely to receive an interstate assignment.") (quoting *Songer*, 618 F.3d at 475).

Finally, the court rejects Plaintiff's argument that because Salhi testified at his deposition that he could only remember the names of three drivers who actually towed vehicles interstate, the

**Memorandum Opinion and Order - Page 15**

court should conclude that there was a separate class of tow truck drivers who completed interstate tows.  *See* Pl.'s Resp. Br. 12.  Plaintiff relies on the following exchange between his attorney and Salhi:

> Q.      (By Mr. Manteuffel) [W]ho delivers vehicles across state lines for Relief Net?
>
> A.      Any driver.
>
> Q.      Do you know the names of anybody that's done it?
>
> A.      Yes.
>
> Q.      Who is that?
>
> A.      The names of the drivers?
>
> Q.      Yes, sir.
>
> A.      Tony, Rodolfo, Brandon, any driver, I mean, will.
>
> Q.      Tony, Rodolfo, Brandon?
>
> A.      Yes.
>
> Q.      Anybody else?
>
> A.      I mean, any driver in the company should have or could have delivered out of state.

Defs.' App. 45.  Salhi's deposition testimony, read in context, does not support Plaintiff's assertion that a separate class of tow truck drivers performed interstate work.  This testimony, instead, supports Defendants' argument that any of the tow truck drivers could reasonably have been expected to drive in interstate commerce consistent with his job duties.

**Memorandum Opinion and Order - Page 16**

The court concludes based on the undisputed facts, and Plaintiff's version of any disputed facts, that Plaintiff could be reasonably expected to drive in interstate commerce consistent with his job duties.

### D.    Summary

For the foregoing reasons, the court will grant Defendants' motion for summary judgment on its affirmative defense of the MCA exemption.  The summary judgment evidence establishes that (i) Defendants are motor carriers subject to the jurisdiction of the Secretary of Transportation; and (ii) Plaintiff was engaged in safety-affecting operations of motor vehicles in interstate commerce. *See* 29 C.F.R. § 782.2(a).  Accordingly, Plaintiff is exempt under the MCA exemption from overtime under the FLSA.  *See* 29 U.S.C. § 213(b)(1).

## IV.    Plaintiff's Cross-Motion for Summary Judgment

In his cross-motion for summary judgment, Plaintiff argues he is entitled to summary judgment because he is not an exempt employee under the MCA exemption.  In support, he makes many of the same arguments presented in his response to Defendants' motion for summary judgment, all of which the court previously addressed (and rejected) in its analysis of Defendants' motion.  For the reasons articulated by the court in granting Defendants' motion for summary judgment, Plaintiff's cross-motion for summary judgment is denied.  *Further, granting the cross-motion would be inconsistent with the ruling previously made regarding Defendants' motion.*

## V.    Conclusion

For the reasons herein stated, the court concludes that Plaintiff has failed to raise a genuine dispute of material fact regarding Defendants' entitlement to the MCA exemption, and Defendants are therefore entitled to judgment as a matter of law.  Accordingly, the court **grants** Defendants

Relief Net Road Services, Inc. and Shadi Salhi's Motion for Summary Judgment (Doc. 26) and

**denies** Plaintiff's Motion for Summary Judgment (Doc. 22).  This action is hereby **dismissed with**

**prejudice**.  As required, a final judgment will issue separately pursuant to Federal Rule of Civil

Procedure 58.

It is so **ordered** this **28th day** of **April, 2015.**


Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 18**